Filed 11/21/22  P. v. Sanchez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079581 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN423308) |
| CARLOS ALBERTO SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Pamela M. Parker, Judge.  Affirmed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Robin Urbanski, Paige B. Hazard, and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Alberto Sanchez appeals the revocation of his probation.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2021, the San Diego County District Attorney filed a complaint charging Sanchez with one count of felony stalking (Pen. Code,[1] § 646.9, subd. (b); count 1) and twelve misdemeanor counts of violation of a domestic violence order (§ 273.6, subd. (a); counts 2 - 13). As to each count, the complaint alleged that the victim was a person defined in Family Code section 6211.[2] (Pen. Code, § 1203.94, subd. (a).) Pursuant to a plea bargain, Sanchez agreed to plead guilty to count 1 and admit the special allegation, and the prosecution agreed to dismiss counts 2 through 13.

On July 20, 2021, per the plea bargain, the trial court sentenced Sanchez to the middle term of three years in prison but suspended the execution of the sentence and placed Sanchez on three years of formal probation, with the condition that he serve one year in local custody. The trial court issued a criminal protective order that prohibited Sanchez from using unlawful threats against another person, having any contact with his ex-girlfriend or his two children, or coming within 100 yards of their homes, schools, vehicles, or work places.

The trial court explained to Sanchez that he had to go to family court to obtain orders for custody and visitation before he could have contact with his children. Further, the court cautioned Sanchez that even if he obtained such orders, his contact with his children "must be peaceful" and he could not "do anything to endanger their safety or wellbeing." Also, the court made clear

---

[1]   Statutory references are to the Penal Code unless otherwise specified.

[2]   The victim was Amanda S., Sanchez's ex-girlfriend. (See Fam. Code, § 6211, subd. (c).) Sanchez and Amanda have two children together. (See Fam. Code, § 6211, subd. (d).)

2

that Sanchez would be in violation of his probation if he contacted his children without getting the required orders from the family court.

As to Sanchez's ex-girlfriend, the court stated that if he obtained orders from the family court and then had to have contact with Amanda to see his children, he could not "threaten her in any manner or be aggressive toward her." The court further clarified that Sanchez could not have direct or indirect contact with Amanda unless he had an order from the family court relating to custody and visitation of his children.

The court explained the restrictions as follows:

> "Let me make sure I explicitly spell it out. You can't have any personal, electronic, telephonic, or written contact with either of them. [¶] You must stay 100 yards away from each of them, their homes, their schools, their vehicles, or their places of employment. [¶] As I said, if you violate this order, you can be charged with a new crime and you can go to prison."

The court then reiterated that "if [Sanchez] go[es] to Family Court and . . . follow[s] whatever the Family Court orders, [he] will not be in violation of [his probation]."

While he was incarcerated at the Vista Detention Facility, on July 22, 2021, Sanchez met with Alondra Muñoz, a social worker. Muñoz works for Project In-Reach Ministry, a re-entry service provider that offers substance abuse and mental health services. Sanchez had requested services from Project In-Reach Ministry. During his meeting with Muñoz, Sanchez referred to Amanda and her new husband, complaining: " 'They can't tell me I can't see my kids. I'm going to see my kids.' " Muñoz cautioned Sanchez about violating the terms of his probation by trying to see his children, to which Sanchez lamented that he could not violate his probation terms after he was released or he would have to serve additional time in prison. He then

3

said, " 'If I have to serve time I will take them out, him or her. I'm not going to do time for nothing.' "

The next day, Sanchez called and talked with his mother. During that conversation, the following exchange occurred:

> "[Sanchez]: I just have a feeling that something is gonna happen.
>
> "[Sanchez's mother]: Something like what [do] you mean?
>
> "[Sanchez]: We can discuss that when I get out.
>
> "[Sanchez's mother]: Yeah. Okay.
>
> "[Sanchez]: So . . . but . . . you know? All right fuck. I may just end up snapping, you know. I don't know. I just . . . (unintelligible)
>
> "[Sanchez's mother]: Well, your—your biggest focus, you know what it is. It's your kids.
>
> "[Sanchez]: Yeah. Well, I'm just saying (unintelligible)
>
> "[Sanchez's mother]: They've -- they've suffered in this. They suffered—
>
> "[Sanchez]: I know -
>
> "[Sanchez's mother]: —in this—
>
> "[Sanchez]: But, what I'm saying, what I'm saying, what I'm saying is there's a certain point of I'm not gonna be able to handle so much shit when I get out, and if I'm gonna get fucked over, I'm gonna snap, and I will fucking take somebody with me, if I gotta go—if I get locked up, I'm gonna fuckin' break somebody off.
>
> "[Sanchez's mother]: Well . . .
>
> "[Sanchez]: 'Cause if I'm gonna get in trouble, I'm gonna make sure I'm in trouble.

4

"[Sanchez's mother]: I don't—you know, I—I don't know. I—I'm getting a little irritated because your number one concern, it has to be your kids and that's it right now, and that's enough.

"[Sanchez]: Yeah, again, again, again, if I'm getting—if I got—I'm locked up right now for some bullshit—

"[Sanchez's mother]: I understand. I understand that—

"[Sanchez]: And if I get in trouble for some bullshit again and I gotta go do prison, I'm gonna go fuck somebody up 'cause if I'm gonna go to prison, I'm gonna fuck somebody up. I'm going to go for a reason, not for some bullshit reason, and that's what, that's what I'm saying. I'm not gonna go look for it. I'm not gonna go look for trouble, but if I'm gonna get in fuckin' trouble for something that I didn't do like this bullshit, someone is gonna go down, and that's a promise.

"[Sanchez's mother]: Mm-kay, well.

"[Sanchez]: You have to understand that like if I get violated for something that I'm not doing or some bullshit excuse that's just bullshit (unintelligible), I'm gonna whack em both—I—fucking—I'm gonna—someone is gonna go— someone is gonna get it if I have to go to prison."

Sanchez was arrested again based on his comments to Muñoz and his mother. On August 13, 2021, the San Diego County Probation Department filed a report of Sanchez's re-arrest, alleging that Sanchez had violated two conditions of his probation: conditions 10a[3] and 10d.[4]

---

[3]    Condition 10a provides: "Do not unlawfully use force, threats, or violence on another person."

[4]    Condition 10d provides: "Comply with any protective order issued pursuant to PC136.2 / PC1203.097(a)(2)."

On October 4, 2021, the trial court held an evidentiary hearing to determine whether Sanchez had violated the conditions of his probation. Muñoz and an investigator from the district attorney's office testified at the hearing. In addition, a tape recording of a portion of the conversation between Sanchez and his mother was played at the hearing.

The trial court found Sanchez to be in willful violation of the terms of his probation. To this end, the court explained:

> "Well, this isn't, I'll grant you, a straightforward violation case in the sense that we're used to, you know, somebody is not supposed to use drugs when they're out on probation and they use drugs, you know, it's done. It's not quite that simple. It's a little more complex. The difference in this case, and what I think really seals it from my point of view as the—as the person who has to decide by only a preponderance of the evidence whether there was a violation, is that there were threats and the threats, the issuance of threats, not just thinking about taking someone out, not just thinking about going to see his children, but actually saying 'no one's going to keep me from seeing my kids,' that's a threat because he's threatening to violate his probation.
>
> "Threatening to take someone out is a direct threat and under the circumstances it was very clear who he was thinking of and there's no, really, dispute about what he said. Not making threats is a term of the probation and he violated his probation by making a very pretty specific threat against protected parties. So I don't think it's quite the case that defense counsel said well, all he's doing is thinking about it and all these conditions have to come true before there's anything he can do. Even in charge of a criminal threat you don't actually have to be able to carry out the threat, if it seems like from an objective standpoint it's a reasonable threat, if it seems reasonably credible. I'm oversimplifying, but you get the message. You don't actually have to take steps to do it.

"The fact that you made it and made it knowingly, knowing that it was in this case a violation to even think about going near his kids or the mother or let alone harming someone I think really puts this over the line of just thinking about violating probation. So my finding is that there is a preponderance of the evidence that the defendant violated a term of his probation. He failed to remain law abiding and that was a condition of his—that was a condition of his probation in addition to not making threats and obviously needed to obey all laws. So the Court is formally revoking probation."

After revoking Sanchez's probation, the court imposed the three-year prison sentence. In addition, the court noted that the fines and fees "were already imposed" and stated it was going to impose or confirm those fines and fees as well.

Sanchez filed a timely notice of appeal.

DISCUSSION

I

REVOCATION OF PROBATION

A. Sanchez's Contentions

Sanchez claims substantial evidence does not support the trial court's finding that he violated a probation condition, causing the court to revoke probation. We disagree.

B. Relevant Law

Probation is not a right but an act of leniency that allows a defendant to avoid imprisonment. (*People v. Moran* (2016) 1 Cal.5th 398, 402.) State law authorizes the sentencing court to impose probation conditions on release that are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of state law, for any injury done to any person resulting from the breach, and . . . for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) A trial court has

7

broad discretion in determining the conditions of probation necessary to serve the primary goals of probation:  promoting rehabilitation and protecting the safety of the public.  (*Moran*, at pp. 402-403; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  As such, the sentencing court may impose a probation condition regulating otherwise lawful conduct, provided the condition is reasonably related to the crime of which the defendant was convicted or to future criminality.  (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380; *People v. Lent* (1975) 15 Cal.3d 481, 486.)

Section 1203.2, subdivision (a) authorizes a trial court to revoke the supervision of a person released on probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of their supervision . . . ."  (*People v. Leiva* (2013) 56 Cal.4th 498, 504-505.)  A trial court possesses "very broad discretion in determining whether a probationer has violated probation."  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*).)  A probation violation need only be proven by a preponderance of the evidence.  (*Id*. at p. 447; *People v. Jackson* (2005) 134 Cal.App.4th 929, 935.)

When a defendant challenges the sufficiency of the evidence supporting a trial court's probation revocation decision on appeal, the reviewing court applies the substantial evidence standard of review.  "[G]reat deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.' "  (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Urke* (2011) 197 Cal.App.4th 766, 773.)  A reviewing court views the evidence in the light most favorable to the judgment and does not reweigh the evidence, resolve conflicts

8

in the evidence, or reevaluate the credibility of witnesses.  (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) " ' "[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . ." ' " (*People v. Kingston* (2019) 41 Cal.App.5th 272, 278 (*Kingston*), quoting *Rodriguez*, *supra*, 51 Cal.3d at p. 443.)

### C.  Analysis

Relying primarily on *In re A.C.* (2019) 37 Cal.App.5th 262 (*A.C.*) and arguing that substantial evidence does not show that he made a criminal threat, Sanchez contends substantial evidence does not support the court's conclusion that he violated any of his probation conditions.  However, *A.C.* is not helpful to Sanchez.

In that case, the court sustained a Welfare and Institutions Code section 602 petition, and the minor was placed on probation.  One of his probation conditions was that he could " 'not unlawfully threaten, hit, fight with, or use physical force on any person.' " (*A.C.*, *supra*, 37 Cal.App.5th at p. 264.)  During an in-home visit with a " 'child and family counselor,' " who was assigned to the minor's family to " 'provid[e] linkages' " so the minor and his family could receive mental health services, the minor told the counselor that if he went to school, " 'and the kids teased him, he was going to react'; he was going to 'basically stab them with whatever he had available'; and he 'was serious about it.' " (*Id.* at p. 265.)  The minor referred to two students, but he did not give the counselor their names.  (*Ibid.*)  The counselor contacted her supervisor to report the minor's statements.  A psychiatric emergency team came to the minor's home and interviewed him.  The minor

9

was eventually admitted to a hospital.  (*Ibid.*)  In addition, the People filed a notice of probation violation, and the juvenile court ultimately determined that the minor had violated his probation conditions.  (*Ibid.*)

On appeal, the minor argued, and the People conceded, that substantial evidence did not support the juvenile court's finding that the minor had violated probation.  (*A.C.*, *supra*, 37 Cal.App.5th at p. 267.)  The appellate court agreed, noting that the minor did not tell the counselor the name of the two students he would retaliate against, and there was no indication in the record that the counselor knew the identity of those students or would tell them about the minor's statements.  (*Id.* at pp. 267-268.)  Moreover, among other things, the court concluded that, by making the statements to the counselor, the minor was trying to convince the counselor that he did not want to return to school (which he did not do).  As such, the court concluded that the minor's statements showed that he needed counseling but did not support a finding that he violated probation.  (*Id.* at p. 268.)

In contrast to the minor in *A.C.* who stated he would retaliate at school if he was bullied but did not identify any specific target by name, Sanchez told Muñoz that he was going to violate probation by seeing his children, when he was released from the Vista Dentition Facility.  When Muñoz told Sanchez that such action would be in violation of his probation conditions, Sanchez responded that he would " 'take them out, him or her.' "  It was clear to Muñoz as well as the trial court that Sanchez was threatening Amanda and her husband.  Moreover, unlike the minor in *A.C.* who did not want to be placed in a situation where he could violate his probation conditions, Sanchez implied that as soon as he was released he would violate his probation conditions so he could see his children, then harm their mother, even though they were the very people protected under the restraining order.  Moreover,

10

he made these comments to a person who he engaged to help him re-enter society once he was released. Making the threats in this context only heightened the trial court's concerns about Sanchez's conduct.

In addition, the day after Sanchez conveyed his threats to Muñoz, he repeated the same type of threats to his mother on the phone. He told her he would "fuck somebody up" and "someone is gonna go down" when he was released. Again, based on the context of the conversation, Sanchez clearly was talking about Amanda and her husband, indicating he was going to "whack 'em both" if he was going to prison anyway.

Thus, rather than indicating he would comply with the court's instructions to pursue visitation through family court, Sanchez focused on the control Amanda and her husband had over the children. Sanchez expressed concern about not having immediate access to visit his children, told Muñoz that Amanda and her husband could not restrict that access, and commented that if they tried, he would respond to the ensuing probation violation with violence. He reiterated this threat when he talked to his mother. In short, there is no dispute that Sanchez threatened violence if he was prevented from seeing his children.

Sanchez's comments are all the more concerning because he was on probation for stalking Amanda. The court also put in place a criminal protective order to protect Amanda and her children from Sanchez. Further, the court was clear that Sanchez could not "threaten [Amanda] in any manner or be aggressive toward her." Yet, despite only being in custody for two days, Sanchez was telling a re-entry specialist that he was going to violate his probation and harm Amanda and/or her husband. He repeated the same type of threats to his mother the next day. In other words, Sanchez

11

was making it clear that he would not abide by his probation conditions once released.  Taking the threats seriously, law enforcement arrested Sanchez.

Against this background, we are satisfied that substantial evidence supported the trial court's finding that Sanchez violated probation.  When the record reveals that a defendant's violation of the terms of probation was the result of irresponsible or willful behavior, termination of probation and imposition of a prison sentence is not an abuse of discretion.  (Cf. *People v. Zaring* (1992) 8 Cal.App.4th 362, 379.)  This is not an extreme case that justifies our interference with the court's discretion to revoke probation.  (See *Kingston, supra*, 41 Cal.App.5th at p. 278.)

## II

## The Fees and Fines

### A.  Sanchez's Contentions

Sanchez argues that the trial court improperly imposed fines and fees a "second time."  Essentially, he maintains certain fines and fees were imposed twice.  In addition, he argues the domestic violence fine imposed under section 1203.097 was unauthorized because it may only be imposed when probation is granted.  Because probation was being revoked, Sanchez insists the court could not impose that fine.  We reject these contentions.

### B.  Background

At the July 20, 2021 sentencing hearing, when Sanchez was granted probation, the trial court imposed the following fees and fines:  an $820 criminal surcharge fee (§ 1465.7, subd. (a)), a $40 court operations fee (§ 1465.8), a $30 criminal conviction fee (Gov. Code, § 70373), a $500 domestic violence fee (§ 1203.097), a $300 restitution fine (§ 1202.4, subd. (b)), and a

$300 probation revocation fine (§ 1202.44). The court stayed the fines and fees pending a determination of Sanchez's ability to pay.[5]

At the October 4, 2021 revocation hearing, the trial court ordered Sanchez to serve the previously imposed three-year prison term and pay the previously imposed fines and fees. The court stated, "We have—the fines and fees were already imposed. Those will be imposed as well or confirmed today." The minutes from the hearing and the abstract of judgment reflect that, aside from the $820 criminal surcharge fee, which was not included, the fines and fees were imposed as the court had originally ordered at the July 20 sentencing. Sanchez did not object to the imposition of the fines and fees or request a determination of his ability to pay.

### C. Analysis

Sanchez argues the instant matter is analogous to *People v. Chambers* (1998) 65 Cal.App.4th 819 (*Chambers*). In that case, the trial court imposed a $200 restitution fine when the defendant pled no contest and was placed on probation but imposed a $500 restitution fine when his probation was revoked, and he was sentenced to state prison. (*Id.* at p. 821.) The appellate court modified the judgment by striking the $500 fine. The court explained that although a restitution fine under section 1202.4 was mandatory, the trial court at the time had discretion whether to make it a condition of probation. (*Chambers*, at pp. 821-822.) The trial court could not, however, impose the fine as a condition of probation and then impose another restitution fine at the time of sentencing. (*Ibid.*) Subsequent amendments to section 1202.4 removed the discretion as to probation, and imposition of the fine as a condition of probation is now mandatory. (*Chambers*, at p. 822.)

---

[5] The probation revocation fine was suspended pending Sanchez's successful completion of probation.

However, the court noted that the restitution fine "survive[s]" a revocation of probation, and as such, should appear in the abstract of judgment. (*Id*. at pp. 822-823.)

In *People v. Cropsey* (2010) 184 Cal.App.4th 961 (*Cropsey*), the appellate court considered and rejected a *Chambers* based argument similar to that made here by Sanchez. In *Cropsey*, the trial court placed the defendant on probation following a no contest plea, the conditions of which included a $200 restitution fine under section 1204.4, subdivision (b), and a $200 restitution fine under section 1202.44, which was suspended pending successful completion of probation. (*Cropsey*, at pp. 962-963.) Following a first probation violation, the $200 probation violation fine (§ 1202.44) was imposed. (*Cropsey*, at p. 963.) Following a third probation violation, the court sentenced the defendant to state prison but suspended execution of sentence, and reinstated probation. (*Ibid*.) At that time, the court " 'reimpose[d]' " the $200 restitution fine, " 'reimpose[d]' " the $200 probation violation fine and added a $200 restitution fine suspended unless parole was revoked. (*Id*. at p. 964.)

The defendant contended the trial court had erred in imposing two restitution fines under sections 1202.4, subdivision (b) and 1202.44. Yet, the appellate court concluded the case was different from *Chambers*. To this end, the court observed that the trial court was attempting to comply with *Chambers* by stating the fines were "reimpose[d]." (*Cropsey*, *supra*, 184 Cal.App.4th at p. 965.) The court was not imposing a "new, prohibited *second* fine." (*Ibid*.) The trial court's intent was confirmed by the fact the clerk wrote " 'previously imposed' " in the minutes adjacent to the restitution fines. The appellate court therefore rejected the defendant's suggestion that all references to the restitution fines should be deleted from the minutes as

14

"infeasible because it sets the stage for an extant but unpaid fine to be overlooked." (*Ibid*.)

The court noted, however, the trial court's words " 'reimpose the restitution amounts' " was "inconsistent with the *principle* upon which *Chambers* was decided." (*Cropsey, supra*, 184 Cal.App.4th at p. 965.) The "survival" of the restitution "made it unnecessary to 'reimpose' those still extant 'restitution amounts.' " (*Id*. at p. 966.) "Where a restitution fine(s) has been previously imposed, the trial court should simply say, 'The abstract of judgment should reflect the restitution fine(s) previously imposed.' " (*Ibid*.)

Here, at the probation revocation hearing, the trial court did not use the term "reimpose" regarding the fines and fees. Nor did the sentencing minutes or the abstract of judgment include any notation that the fines and fees had been previously imposed. Nonetheless, the court acknowledged that "the fines and fees were already imposed" and stated that they would "be imposed as well or confirmed today." Although perhaps not as clearly stated as the court suggested in *Cropsey*, we determine the trial court here was not imposing duplicative fines and fees but merely confirming the fines that had been previously imposed. Our conclusion is buttressed by our comparison of the fees and fines imposed before and after revocation; they are the same (except that it appears the court did not impose the $820 penalty assessment after revoking probation). As such, although it might have been preferable, as suggested in *Cropsey*, for the trial court to specifically order that the abstract of judgment reflect imposition of fines "previously imposed," the imposition of the fines and fees below did not constitute a second set of fines and fees that must be struck. (See *Cropsey, supra*, 184 Cal.App.4th at p. 966.)

15

Sanchez also contends that the court erred in reimposing the domestic violence fee under section 1203.097 because that fee may only be imposed when a defendant is granted probation, and the court revoked probation in the instant matter. (See § 1203.097, subd. (a).) We disagree.

A fee previously imposed during a grant of probation "remain[s] in force despite the revocation of probation." (*Chambers, supra*, 65 Cal.App.4th at p. 823.) Moreover, section 1203.097, subdivision (a) provides that if a person is granted probation for a crime of domestic violence, the term of probation shall include a minimum payment by the defendant of $500. No provision relieves Sanchez of the responsibility to pay this fee if probation is revoked.

In addition, we are not persuaded by Sanchez's reliance on *People v. Kirvin* (2014) 231 Cal.App.4th 1507. There, the defendant was never granted probation, but the trial court still imposed a domestic violence fee at the time of conviction. (*Id.* at pp. 1513, 1520.) In contrast, here, the domestic violence fee was properly imposed when probation was granted.[6]

---

[6] At the end of his opening brief, in a single sentence, Sanchez asserts "the domestic violence fund fee that was originally imposed at the grant of probation must again be stayed pending an ability to pay hearing." However, Sanchez neither objected to the fees and fines at the revocation hearing nor requested an ability to pay hearing. As such, we determine that he forfeited this claim on appeal. (See *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.) Moreover, there is no indication in the record that Sanchez lacked the ability to pay the domestic violence fine. The probation report indicates that he has been self-employed as a vehicle fabricator for the past four years. In addition, he has worked in the construction industry and as a heavy machine operator. And Sanchez represented that he earns about $1,000 a month from his business and receives $850 every two weeks for unemployment but pays $600 per month in rent and utilities.

16

## DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

I CONCUR:


McCONNELL, P. J.

Buchanan, J., Dissenting.

Carlos Alberto Sanchez was accused of violating two conditions of his probation: conditions 10a and 10d. Condition 10a provides: "Do not unlawfully use force, threats, or violence on another person." Condition 10d provides: "Comply with any protective order issued pursuant to PC136.2 / PC1203.097(a)(2)." In my view, there is no substantial evidence that Sanchez violated either of these conditions.

The majority appears to conclude that Sanchez violated condition 10a by threatening to harm his ex-girlfriend and/or her husband in his conversations with a social worker and his mother. However, condition 10a applies only if Sanchez "unlawfully" threatened another person.

In *In re A.C.* (2019) 37 Cal.App.5th 262 (*A.C.*), the court construed a nearly identical probation condition requiring that the probationer " 'must not *unlawfully* threaten' any person." (*Id.* at p. 267, italics added.) The court concluded that to establish a violation of this condition, the People had to prove the elements of a criminal threat under Penal Code section 422.[1] (*A.C.*, at p. 267.) Specifically, "the People must prove: (1) [the probationer] made the statements 'with the specific intent [that they] be taken as a threat' . . . ; (2) he communicated the statements directly or by a third party to the victims; and (3) the statements caused the victims to be in a state of 'sustained fear.' " (*Ibid.*)

The *A.C.* court further noted that when such a threat is conveyed to a third party, section 422 requires that the defendant must have intended it to be communicated to the victim. (*A.C.*, *supra*, 37 Cal.App.5th at p. 267, citing *People v. Felix* (2001) 92 Cal.App.4th 905, 913; see also *In re Ryan D.* (2002) 100 Cal.App.4th 854, 861-862.)

---

[1] Further undesignated statutory references are to the Penal Code.

The majority here distinguishes *A.C.* factually, but does not address its holding that a standard probation condition prohibiting the probationer from "unlawfully" threatening another person requires proof of the elements of a criminal threat under section 422. (*A.C.*, *supra*, 37 Cal.App.5th at p. 267.) In the respondent's brief, the People have explicitly conceded that the evidence is insufficient to establish a violation of condition 10a under this standard. The People state: "Respondent agrees that the evidence does not show that appellant violated the standard term listed in the probation order that he not make 'unlawful' threats as defined [in] section 422."

As Sanchez persuasively argues, there is no substantial evidence to support the required elements that Sanchez intended the threats he made in conversations with the social worker and his mother to be communicated to his ex-girlfriend or her husband, or that his threats caused either of them to be in sustained fear. The majority does not discuss these elements of a criminal threat under section 422 and does not identify any other law that made Sanchez's threats unlawful. Based on the People's concession, and the failure of proof of the required elements, I would find no substantial evidence that Sanchez violated condition 10a.

I would also find no substantial evidence that Sanchez violated condition 10d requiring him to comply with the criminal protective order. The protective order required Sanchez to have no contact with his children, his ex-girlfriend, or her husband, and not to come within 100 yards of them or their homes, places of employment, schools, or vehicles—except for "peaceful contact" to facilitate the safe exchange of children and court-ordered visitation as authorized in any subsequent court order. There is no evidence that Sanchez committed any of these prohibited acts. Although the majority

2

correctly notes that Sanchez *threatened* to contact his children, merely threatening to do so (or just thinking about it) is not one of the prohibited acts.

Finally, I would reject the People's argument that the trial court orally imposed *additional* conditions of probation beyond those listed in the written order granting formal probation. The court orally imposed the same conditions listed on the written order, referring to them by the specific paragraph numbers in the order. The court then went on to discuss the terms of the separate protective order. In its discussion of the protective order, the trial court explained to Sanchez that to have contact with his children in the future, the order required that he first get an order allowing visitation, and that any contact to facilitate visitation must be "peaceful contact," which the court defined to mean that Sanchez "cannot do anything to endanger their safety or well[-]being" and "can't threaten [the ex-girlfriend] in any manner or be aggressive toward her."[2] In this discussion, the court merely explained the meaning of the exception to the protective order for "peaceful contact" to facilitate a future order authorizing visitation. Thus, the majority quite rightly does not rely on the theory that the court imposed additional conditions of probation beyond those listed in the written probation order—even though this is the only theory offered by the People as a basis for affirming the revocation order.

Even assuming the court's oral explanation of the written protective order could reasonably be construed to be part of its terms, I believe there

---

[2]    The protective order included a narrow "exception to the 'no-contact' or 'stay-away' provision[s]" for "peaceful contact with the protected persons named above . . . only for the safe exchange of children and court-ordered visitation as stated in . . . any Family, Juvenile, or Probate court order issued *after* the date this order is signed."

3

would still be no substantial evidence of its violation.  As noted, the court was discussing a narrow exception to the no-contact and stay-away provisions of the protective order for "peaceful contact" to facilitate implementation of a future visitation order.  But there cannot be a violation of the protective order without a violation of its no-contact or stay-away provisions.  And there is no evidence that Sanchez committed any such violation.  Although the protective order applied to contact "through a third party," there is no evidence that any third party communicated Sanchez's threats to the protected persons or that Sanchez so intended.

For these reasons, I would reverse the trial court's orders revoking probation and imposing the previously suspended prison sentence.  Although I agree that Sanchez's conduct is disturbing, I do not believe there is substantial evidence that he violated any condition of his probation.  Accordingly, I dissent.

BUCHANAN, J.

4